# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MOHAMED IBRAHIM,

        Petitioner,    :    Case No. 2:21-cv-5065

- vs -        District Judge James L. Graham
        Magistrate Judge Michael R. Merz

TOM SCHWEITZER, Warden,
 Madison Correctional Institution,

        :

        Respondent.

## REPORT AND RECOMMENDATION

This is a habeas corpus case brought by Petitioner Mohamed Ibrahim pursuant to 28 U.S.C. § 2254 with the assistance of counsel. Ibrahim seeks relief from his convictions in the Franklin County Court of Common Pleas on two counts of felonious assault, one count of aggravated burglary, eleven counts of kidnapping, and eleven counts of aggravated robbery with a firearm specification, resulting in a combined sentence of fifty-seven years imprisonment (Petition, ECF No. 1, PageID 1). The relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9) and the Amended[1] Reply (ECF No. 25).

---

[1] The Magistrate Judge ordered an amended reply because the original reply did not contain record citations as required by S. D. Ohio Civ. R. 7.2(b)(3).

1

**Litigation History**

On January 31, 2012, Petitioner was indicted on the counts of conviction plus twenty-two counts of robbery; the robbery counts were dismissed before trial (Indictment, State Court Record, ECF No. 8, Ex. 1). Ibrahim was convicted by a jury and sentenced as indicated. He appealed to the Ohio Tenth District Court of Appeals which affirmed. *State v. Ibrahim,* 2014-Ohio-666 (Ohio App. 10th Dist. Feb. 25, 2014). Ibrahim did not appeal to the Supreme Court of Ohio.

While the direct appeal was pending, Ibrahim, with the assistance of counsel other than the attorney who now represents him, filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, pleading that he had received ineffective assistance of trial counsel in the following respects:

>(1) Failure to investigate and adequately prepare for trial;
>
>(2) Failure to subpoena key witnesses to testify on Petitioner's behalf;
>
>(3) Failure to inform Petitioner sufficiently to enable him to assist in his own defense;
>
>(4) (a) Failure to preserve the record of an objectionable translation of testimony offered at trial in the Somalian language; (b) failure to request that the interpreter's qualifications be established on the record; (c) failure to question the availability of a certified interpreter; (d) failure to object to less than a word-for-word translation; and (e) failure to request that the interpreter be sworn in on the record;
>
>(5) Failure to argue self-defense or request a self-defense instruction;
>
>(6) Failure to adequately present or develop significant evidence at trial;
>
>(7) Failure to investigate, evaluate, and present evidence of mitigating circumstances with respect to Petitioner's sentencing;

>    (8) Failure to object to separate sentences for aggravated robbery and kidnapping convictions

(Petition for Post-Conviction Relief, State Court Record, ECF No. 8, Ex. 10).

The trial court denied relief. *Id.* at Ex. 15. Ibrahim then appealed to the Tenth District Court of Appeals, raising as his sole assignment of error that the trial court should have granted him an evidentiary hearing on his Petition. The court of appeals affirmed except for ordering an evidentiary hearing with testimony from Amina Manguera, Mowlina Aboke, and Aweis Ibrahim whose credibility could not be properly evaluated without a hearing. *State v. Ibrahim*, 2014-Ohio-5307 (Ohio App. 10th Dist. Nov. 28, 2014)(Judges Dorian, Klatt, and O'Grady). On the way to reaching that conclusion, the court found a number of ineffective assistance of trial counsel claims barred by *res judicata*:

> {¶ 17} Appellant also claimed that counsel should have questioned the witnesses at trial regarding: (1) the fact that there was no blood on his face mask because he removed it before entering the apartment; (2) the fact that the police only collected the cellphones of appellant and co-defendant Noor; (3) the fact that appellant's wallet and $80 were stolen from him during the incident; (4) the fact that appellant did not own the gun; (5) the fact that the apartment was a known drug house; (6) the fact that appellant had an altercation with Abdi Mohamed ten days prior to the robbery; and (7) the fact that the prosecuting witnesses fabricated a story. Several police officers testified at trial and could have been questioned as to the issues relating to physical evidence. Appellant himself testified that he did not own a gun, and numerous witnesses testified that the apartment was a known drug house. Appellant also testified that he and Abdi Mohamed had gotten into it on the streets before and that the prosecuting witnesses must have coordinated their stories. All of this was clear from the transcript. These claims could have been raised on direct appeal and, accordingly, are barred by res judicata. Therefore, we affirm the trial court's denial of the petition for postconviction relief on grounds of ineffective assistance of trial counsel for failure to advise appellant regarding these issues.

*Ibbrahim, supra*.

With regard to the claim of ineffective assistance of trial counsel by failure to investigate,

the Tenth District held on the first post-conviction appeal:

> {¶ 19} Furthermore, with regard to appellant's averments that he asked his trial counsel to further investigate certain issues, we keep in mind that appellant did not present the affidavit of his trial counsel to corroborate either that trial counsel had been advised of these issues and witnesses by appellant or that he did not further investigate these issues. The lack of such an affidavit by trial counsel is significant because there is no evidence indicating what steps trial counsel took to prepare for trial.

*Id.*, citing *State v. Messer–Tomak,* 10th Dist. No. 10AP–847, 2011–Ohio–3700, ¶ 14–15.

With regard to the other witnesses whose affidavits were filed in support of the Petition, the court found they did not justify an evidentiary hearing because

> **{¶ 25}** The affidavits of Fatima Ali Yussuf, Hussein Ibrahim, Luuley Mohamed, and Mohamed Bukdow contain nearly identical language and appear to have been drafted by the same person. Furthermore, these affidavits, as well as the affidavit of Abdullah Aboke, state generally that the affiants "had information" to offer but do not specify what particular information they would have offered, nor whether the information would have been helpful to appellant at trial. The affidavit of Marian Mohamed establishes that the information she would have offered to an investigator or at trial was made known to her *after* appellant's trial. Trial counsel cannot be considered ineffective for failing to investigate information gathered after trial. For these reasons, we find the trial court did not err in not holding a hearing to determine the credibility of these six affiants.

*Id.* In addition to finding it was not deficient performance to fail to present some of the evidence tendered in post-conviction, the panel also concluded Ibrahim had failed to show prejudice as to some of the omitted evidence:

> To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence that counsel failed to present, but also that "there is a reasonable probability that the evidence would have swayed the jury to impose [a lesser sentence]." *Keith* at 536. We find that appellant himself informed the court that he had a family. Furthermore, although appellant's counsel did not present all the mitigating evidence Manguera and Aweis presented, we cannot say

4

> there was a reasonable probability that the evidence would have swayed the jury to impose a lesser sentence.

*Id.* at ¶35.

After an evidentiary hearing, the trial court again denied the post-conviction petition (State Court Record, ECF No. 8, Ex. 58). The trial judge concluded, for reasons he explains, "defendant failed to demonstrate ineffective assistance of trial counsel, because the factual bases underlying his claim are speculative, uncertain, vague, contradicted, and incredible." *Id.* at ¶ 22.

Ibrahim again appealed to the Tenth District which affirmed, albeit by a divided vote. *State v. Ibrahim*, 2020-Ohio-3425 (Ohio App. 10th Dist. Jun. 23, 2020)(Dorrian, Brown, and Brunner (dissenting)). In reaching its ultimate conclusion, the Tenth District added to the findings it had made on the prior appeal.

> {¶ 15} In its decision and entry denying the petition, the trial court rendered the following findings of fact based on the evidence presented at the evidentiary hearing following remand. Appellant's brother, Aweis, testified "he was not present when the offenses occurred." Aweis testified that Abdi Mohamed, the owner of a coffee shop, "bragged about beating up [appellant] and putting him in jail for life." (July 19, 2017 Decision at 2.) Aweis "also testified that his uncle, Abdulkadir Aden, 'a couple of guys,' 'the lady that owned the place,' and 'one of the guy[s]' asked for $10,000 to not appear for trial." (July 19, 2017 Decision at 2-3.) In his affidavit, Aweis "averred that 'Somalilander witnesses' made these purported statements." (July 19, 2017 Decision at 3.)
>
> {¶ 16} Aweis stated "he was aware of the alleged extortion attempt before [appellant's] trial began * * * but never provided this information to [appellant's] trial attorney." Aweis "never came to court during the week-long jury trial, even though he knew the trial was going on, and [appellant's] trial attorney was present." Aweis "never spoke to trial counsel, the prosecutor, or the police." Aweis visited [appellant] in jail "seven times in 2012." (July 19, 2017 Decision at 3.)
>
> {¶ 17} Mowlina Aboke testified that Abdi Mohamed came into Aboke's barbershop "after the offenses occurred with 'a patch or something' on 'his neck or head.'" Mohamed "said 'he got hit on

5

the night of that incident.' " Mohamed further "said two guys came in to buy khat, and they were robbed." Aboke "did not believe Abdi Mohamed." Aboke "refuted" the averment in his affidavit "that Abdi Mohamed told Aboke that the occupants of the apartment attempted to extort money from [appellant's] family." According to Aboke, "it was 'not just one person' * * * talking about the $10,000 in his barbershop, that it was not 'the coffee shop guy,' that it was 'the person that got shot.' " This conversation "occurred within a few days or one week of the offenses." Aboke was aware "that [appellant's] trial took place one year later." Aboke "did not tell the police, or the prosecutor, or [appellant's] trial attorney." (July 19, 2017 Decision at 3.)

{¶ 18} Amina Manguera, appellant's aunt, testified and "refuted the statements in her affidavit." Manguera "testified that she told [appellant's] post-conviction attorney that * * * the things you are telling me, it's not correct." (July 19, 2017 Decision at 3.) Manguera "testified, 'Like I told you before, I don't know anything about this. * * * And I'm telling you the same thing again.' " (July 19, 2017 Decision at 3-4.) When Manguera was shown her affidavit "she did not recognize it," and "testified, 'I cannot read or write. They must have wrote those things.' " Manguera "testified that what was said in her affidavit she either did not say or did not remember saying." Manguera "also testified she did not know whether there was a party or drug activity, that she was not there, and that she did not witness anything." (July 19, 2017 Decision at 4.)

{¶ 19} Appellant testified "that he told his trial attorney that the witnesses were not going to come to court * * *, that he never asked his trial attorney to speak with his family, and that his trial attorney provided discovery, which they discussed." Appellant "also acknowledged that his trial attorney visited him eight times while he was in jail." Appellant "did not know of the alleged extortion attempt until after his trial," and testified "that he obtained the 'visiting list' * * * from his 'case manager.' " Appellant "thought two of the victims, Farheyo [Abdulkar] and Abdi Aden, tried to visit him, but they never did, either in prison or in jail." (July 19, 2017 Decision at 4.)

{¶ 20} Trial counsel for appellant, Jeffrey M. Basnett, visited appellant in jail "six times in 2012, and twice in 2013." During these visits, Basnett "repeatedly asked [appellant] to tell him what happened." Appellant "refused, simply stating over and over again that the witnesses were not going to come to court." Appellant "never talked to counsel about any kind of extortion plot or anything like that." (July 19, 2017 Decision at 4.)

6

> {¶ 21} Basnett "never spoke to [appellant's] brother, never had contact with [appellant's] brother, and never received any messages from [appellant's] brother, even though * * * Basnett's office was right across the street from the courthouse." (July 19, 2017 Decision at 4-5.) Basnett "also never spoke with Mowlina Aboke or Amina Manguera." (July 19, 2017 Decision at 5.)
>
> {¶ 22} Appellant's "Exhibit 15, attached to his post-conviction petition and identified as 'Jail Visitation List' is an ODRC document, and is not a list of persons who visited [appellant] in prison." (July 19, 2017 Decision at 5.)

*State v. Ibrahim*, 2020-Ohio-3425 (10th Dist. June 23, 2020).

The Tenth District on this second appeal declined to hear claims of ineffective assistance of trial counsel that were barred by *res judicata* because they could have been raised on direct appeal or were barred by the law of the case because they had already been decided on the prior appeal or were not within the issues remanded for evidentiary hearing. On the two remanded issues, the Tenth District found the supposed jail visitor log that purportedly showed Ibrahim was visited by two witnesses in fact was not such a log and the presence of the two relevant names on the document showed they had not visited Ibrahim. As to the supposed extortion plot, the Tenth District found that the record supported the trial court's conclusion that the affidavit testimony presented was not credible, in part because two of the witnesses refuted their own affidavits in live testimony. It also affirmed the trial court's finding that Ibrahim's brother did not have admissible testimony and his bias in favor of his brother undermined his credibility.

Having also presided at trial, the post-conviction judge added his own observations of the trial attorney's performance, both in this case and others. He noted that none of Ibrahim's post-conviction witnesses had been present during the crime, but that nine of the victims had testified. Finally, Ibrahim and his co-defendant were found inside the crime scene when the police arrived and Ibrahim's DNA were found there on a ski mask and firearm. These factual findings supported

7

the conclusion on the prejudice prong of *Strickland*.

The Supreme Court of Ohio declined jurisdiction over a further appeal. *State v. Ibrahim*, 160 Ohio St.3d 1421 (2020).

On February 18, 2020, Ibrahim filed an application for reopening his direct appeal pursuant to Ohio R. App. P. 26(B)(State Court Record, ECF No. 8, Ex. 68). The Tenth District dismissed the Application because it was untimely and beyond the permitted length; Ibrahim did not appeal.

Petitioner then, with the assistance of counsel, filed the instant habeas corpus Petition on October 8, 2021, raising the following one ground for relief:

> **Ground One**: Ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments.
>
> **Supporting Facts:** Trial counsel admitted to conducting no independent investigation of the case. As a result, he failed to discover witnesses, including alleged victims who had bragged that a robbery did not occur, and who had attempted to extort $10,000 from Petitioner's family in exchange for not testifying at Petitioner's trial.
>
> In addition, there were witnesses who heard from alleged victims that the place where the alleged robbery occurred was a drug house and that the claim of robbery was a fabrication.
>
> Trial counsel further admitted he did not retain or request funds to hire an investigator, never interviewed anyone, never viewed the alleged crime scene, and never looked for security cameras which may have revealed relevant activity.
>
> Trial counsel had been diagnosed with cancer just prior to the trial, which clearly affected his ability to prepare for trial and to be fully effective during each day of the trial.
>
> Petitioner's brother was unable to communicate with trial counsel because counsel did not return his telephone calls nor meet with him. Petitioner's brother had significant relevant information which would have exonerated Petitioner.
>
> Petitioner's brother also had information relevant to the character of Petitioner which would have been relevant to mitigation.

(Petition, ECF No. 1, PageID 7).

## Analysis

Petitioner's sole overarching ground for relief is that he received ineffective assistance of trial counsel, but he lays out numerous subclaims. Respondent concedes that Ibrahim's claim was "presented in his pleadings to all state courts in his post-conviction actions, [and therefore] has been exhausted before the Ohio courts." (Return, ECF No. 9, PageID 1991).

By the time the case had reached the Reply stage, Petitioner phrased his claim thus:

> When trial counsel has self-admitted conducting no independent investigation without strategic decision making, counsel's representation is deficient and has fallen below a tolerable standard for effective assistance of counsel.

(Amended Reply, ECF No. 25, PageID 2139). Thus the Court treats as abandoned the other ineffective assistance of trial counsel sub-claims made in the Petition.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and resulting prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder,* 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct.

> 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In the appeals from denial of Ibrahim's petition for post-conviction relief, the Tenth District decided his claim of ineffective assistance of trial counsel on the merits. Therefore to prevail in habeas corpus, Ibrahim must show that the Tenth District's decision was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

In the Amended Reply, Ibrahim suggests no deference is due to the Ohio courts' factual determinations in this case because "[a] state court fails to make factual determinations entitled to review under §2254(e)(l)'s limitations when it simply provides the "background to its decision." Amended Reply, ECF No. 25 , PageID 2139, citing *Vasquez v. Bradshaw,* 345 Fed. Appx. 104, 113 (6th Cir. Sept.2, 2009). Any suggestion that the two Tenth District decisions in this case are mere

11

"recitations of background" would be a grossly unfair characterization. In both instances the court majority made definitive findings on the factual issues, based on thorough consideration of the underlying evidence. Ibrahim contrasts the majority findings on both appeals with Judge Brunner's assessment of the fact in her dissent on the second appeal. But multi-judge courts make decisions by majority vote. On both appeals, the Tenth District decided the presented questions of fact by majority vote.

Ibrahim notes that a habeas petitioner can overcome the presumption of correctness in state court fact findings "by showing [by] clear and convincing evidence that the state court's factual determination was erroneous." (Amended Reply, ECF No. 25, PageID 2138, citing *Sawyer v. Hofbauer*, 299 F.3d 605, 609 (6th Cir. 2002). That is certainly a correct general principle of law in habeas jurisprudence, but, invoking it, a habeas petitioner must actually point to the evidence in the state court record which shows the state court determination is inaccurate.

When the Magistrate Judge began to attempt to write this Report, he observed that Ibrahim was apparently asking this Court to review the evidence of ineffective assistance of trial counsel *de novo* (Order for Amended Reply, ECF No. 19, PageID 2063). The Order pointed out the deficiencies of the original Reply in not complying with S. D. Ohio Civ. R. 7.2(b)(3) to provide record references and required that they be corrected. The Order continues:

> Much more importantly, the case shapes up as a contest between the majority opinion on the second postconviction appeal and Judge Brunner's dissent. Ibrahim's sole ground for relief is that he received ineffective assistance of trial counsel (Petition, ECF No. 1, PageID 7). The Ohio Tenth District Court of Appeals decided that question on the merits. To prevail, Ibrahim must overcome the presumption of correctness of that conclusion by showing it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)((2).

With this alert to the critical issue in the case, the Court gave Petitioner's counsel an

12

opportunity to address that issue with an Amended Reply. Apparently ignoring the point, Ibrahim begins his Amended Reply by stating he "acknowledges the statement of facts set forth in Respondent's Return of Writ with the additional statement of case and facts which appear in the dissenting opinion in *State of Ohio v. Mohamed Ibrahim*, 2020-Ohio-3425 (10th Dist., 2020)." (ECF No. 25, PageID 2129). The Amended Reply then proceeds to quote verbatim from Judge Brunner's dissent ¶¶ 105-119, with the quotation occupying PageID 2129-35, almost half of the Amended Reply. And aside from the quotation, there is no argument whatsoever on what the evidence shows as compared to what the two panels of the Tenth District found. See PageID 2135.

Petitioner's various sub-claims of ineffective assistance of trial counsel are analyzed separately below in slightly different order from their presentation in the Petition.

**Distraction by Cancer Diagnosis**

Petitioner claims his trial attorney was diagnosed with cancer shortly before trial and the diagnosis interfered with his ability to prepare for and conduct the trial (Petition, ECF No. 1, PageID 7).

As Respondent points out in the Return, the trial attorney's cancer diagnosis did not happen until July 2013 and the trial in this case was concluded in January, 2013 (Return, ECF No. 9, PageID 2002, citing PCR Tr. TR., ECF No. 8-3, PageID 1768). A diagnosis that happened six months after trial cannot have caused distraction at the time of trial. Petitioner appears to have abandoned this claim as it is not argued in the Amended Reply.

**Failure to Investigate, Interview Witnesses, Seek Expert Assistance**

13

Petitioner claims his trial attorney conducted no independent investigation, never visited the crime scene, did not interview witnesses who were prepared to testify that alleged victims admitted the crime was fabricated, never sought to review security camera footage, etc.

Respondent defends this claim on the merits, asserting that the Tenth District's decision on these asserted deficiencies is a reasonable application of *Strickland*[2].

In reciting the trial attorney's alleged deficiencies of failure to investigate, failure to visit the crime scene, or failure to attempt to view security footage, the Amended Reply does not discuss the trial attorney's unrefuted testimony that Ibrahim refused to cooperate by providing counsel with any leads for investigation, insisting the opposing witnesses/victims would not appear for trial. Ibrahim claims counsel failed "to interview promising witnesses, having no reason to believe they would not be valuable in securing a defendant's release, constitutes negligence, not trial strategy." But who are these supposed promising witnesses? The witnesses who testified in post-conviction had not been identified to counsel before trial. None of them were present during the crime and so could not have testified from personal knowledge. Much of the evidence relied on by Ibrahim in the Amended Reply to show deficient performance not only was not known to counsel, but could not have been discovered by reasonably diligent investigation. For example, how would counsel have known of the neighborhood barber who eventually testified in post-conviction?

Of course as a general proposition there are a number of steps competent counsel should take to prepare for trial. But to show ineffective assistance a habeas petitioner must show not only deficient performance, but prejudice. The Ohio courts found no prejudice from counsel's asserted omissions because Ibrahim, even after many years of pursuing post-conviction relief, had not

---

[2] Technically, Petitioner must show it is an objectively unreasonable application of *Strickland*.

found a witness who would likely have made any difference in outcome, given the trial testimony.

Instead of proving prejudice, the Amended Reply attempts to rely on the presumption of prejudice recognized in *United States v. Cronic,* 466 U.S. 648 (1984), where counsel is denied or absent during a critical stage of the proceedings. That will not do; counsel was never absent from the proceedings in such a way as to give rise to a presumption of prejudice. If there were witnesses who should have been called to testify and who would have made a difference in the outcome, Ibrahim was required by *Strickland* to show the state courts who they are and what they would have testified to. Having failed to persuade the state courts, Ibrahim must now show this Court that he presented that evidence to the Ohio courts which nevertheless unreasonably failed to find his evidence persuasive. The fact that one Ohio appellate judge found the evidence persuasive does not demonstrate that the other five were unreasonable.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Judge Brunner's dissent demonstrates that reasonable jurists could disagree on the ultimate issue: did Ibrahim suffer from ineffective assistance of trial counsel? Therefore Petitioner should be granted a certificate of appealability if requested.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report

and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

July 11, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge
